# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

    Plaintiff,  :  Case No. 1:16-cr-105
          Civil Case No. 1:21-cv-00086

          District Judge Susan J. Dlott
- vs -        Magistrate Judge Michael R. Merz

MARTIN McCRACKIN,

    Defendant.  :

## REPORT AND RECOMMENDATIONS

This case under 28 U.S.C. § 2255 is before the Court for decision on the merits on the Defendant's Motion to Vacate (ECF No. 51) and the Response in Opposition of the United States (ECF No. 63). Defendant was reminded of his right to file a reply to the Response not later than July 3, 2024 (ECF No. 64), but has not done so.

**Litigation History**

The grand jury for this District returned an Indictment of the Defendant on November 2, 2016, charging him with distribution of heroin on two different dates (Indictment, ECF No. 3, Counts One and Two), possession of a firearm in furtherance of a drug trafficking offense (Count Three), and possession of a firearm by a convicted felon (Count Four).

1

On February 12, 2019, Defendant entered into a Plea Agreement with the United States (ECF No. 34) in which Defendant agreed to plead guilty to Counts One and Three in return for an agreed sentence of sixty months on each count, to be served consecutively. Pursuant to the Plea Agreement, the Court conducted a change of plea hearing on February 28, 2019, at which Defendant pled as agreed. On February 10, 2020, District Judge Black imposed the agreed sentence (ECF No. 44). Defendant did not appeal, but filed the instant Motion to Vacate on February 4, 2021 (ECF No. 51).

**The Parties' Claims**

Defendant pleads two grounds for relief. In the first he asserts ineffective assistance of trial counsel by his counsel for part of the case, Attorney Carl Lewis. Attorney Lewis is said to have provided ineffective assistance by not raising Defendant's Fourth Amendment claim under the so-called "stalking horse" theory during the suppression hearing. In the Second Ground for Relief, he makes the independent claim that his conviction violates the Fourth Amendment under the same "stalking horse" theory.

The United States opposes Defendant's Motion on the merits and does not raise any affirmative defenses.

# Analysis

**First Ground for Relief:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Defendant asserts Attorney Carl Lewis, his attorney for the suppression hearing, failed to provide constitutionally adequate assistance of counsel by not arguing the Motion to Suppress under the "stalking horse" theory.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

3

> conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

In assessing the quality of Attorney Lewis's performance to determine if it was deficient, the Magistrate Judge notes that he vigorously litigated the Motion to Suppress, filing a twenty-five page memorandum in support (ECF No. 16) and a motion for reconsideration after Judge Black denied the Motion (ECF No. 27). The thrust of the Motion was that the law enforcement officers involved lacked sufficient cause to make the initial stop of Defendant's vehicle.

The question before the Court now is whether Defendant's "stalking horse" theory is sufficiently well established that it constituted deficient performance to fail to argue it at the Motion to Suppress stage of these proceedings.

Defendant relies on three decisions to support his "stalking horse" theory.

In *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the Supreme Court upheld a search of a probationer's home under a regulation of the Wisconsin probation system which required a searching probation officer to have reasonable grounds for the search but did not require a search warrant. The phrase "stalking horse" is not used. The Court found the "reasonable grounds" standard was an adequate substitute for the probable cause needed to support a search warrant.

In *United States v. Penson*, 141 Fed.Appx. 406 (6th Cir. 2005), the Sixth Circuit upheld denial of a motion to suppress which had relied on a "stalking horse" theory. The circuit court noted that it had approved the "stalking horse" theory in a published decision, *United States v. Martin,* 25 F.3d 293, 296 (6th Cir.1994). But it had also held in *Martin* that "it is wholly permissible for law enforcement officers and probation officers to "work together and share information to achieve their objectives." *Id.* That is what happened here. Law enforcement officers stopped McCrackin as he was attempting to sell heroin to a regular customer, not knowing

5

she had died of an overdose from his last sale. In the course of the stop they found the parole officer's business card. By that time they already had probable cause to arrest McCrackin for the drug trafficking and firearms violations to which he eventually pled guilty. It was no violation of the Fourth Amendment for the officers to share the information they had – that a parolee was selling heroin – with the Defendant's parole officer. This is not a case where law enforcement had a suspicion of a person but no probable cause and then used the fact of that person's being on parole to conduct a warrantless search.

Thus the facts of this case do not fit the "stalking horse" theory as outlined in *Penson*. To win the Motion to Suppress, Attorney Lewis had to persuade the Court that the was no probable cause to stop McCrackin. That was an uphill battle because McCrackin had called the telephone of his deceased customer and attempted to set up another sale. Possessing her cellphone, the officers went to the site of the proposed sale and identified McCrackin as the seller.

Lastly, McCrackin relies on *United States v. Gibson*, 2012 U.S. Dist. LEXIS 48125 (S.D. Ohio, Apr. 4, 2012). But that is not an opinion on a motion to suppress, but rather an order for pretrial detention entered by then-Magistrate Judge Michael Newman[1]. District Judge Black, to whom this case is assigned, was also the presiding District Judge in *Gibson*. He later rejected Gibson's reliance on the "stalking horse" theory not on the basis of any factual difference, but because Supreme Court precedent raised doubts about the viability of that theory at all. *United States v. Gibson*, 2013 U.S. Dist. LEXIS 136692 (Sept. 24, 2013). In *United States v. Knights,* 534 U.S. 112 (2001), the Court had held that was no basis for examining the purpose of a search in determining its constitutionality. Judge Black noted that *Knights* had caused some courts to hold the "stalking horse" theory was no longer good law. *Id.* at *22 citing *United States v.*

---

[1] Judge Newman was subsequently appointed a District Judge of this Court.

*Williams*, 417 F.3d 373, 377-78 (3rd Cir. 2005); *United States v. Tucker*, 305 F.3d 1193, 1199-1200 (10th Cir. 2002); and *United States v. Stokes*, 292 F.3d 964, 967 (9th Cir. 2002). All of this had happened well before the motion to suppress proceedings in this case.

Given this state of the law, it was not deficient performance to fail to use, much less rely on, the "stalking horse" theory as outlined in *Penson*. McCrackin's First Ground for Relief should be dismissed on this basis.

**Second Ground for Relief: Violation of the Fourth Amendment**

In his Second Ground for Relief, McCrackin claims his conviction and sentence violate the Constitution because based on evidence seized in violation of the Fourth Amendment. This claim is not cognizable in § 2255 proceedings. *Stone v. Powell*, 428 U.S. 465 (1976). *Stone* applies to Fourth Amendment claims brought in § 2255 motions. *Ray v. United States*, 721 F.3d 758, 761-762(6th Cir. 2013). McCrackin's second ground for relief should therefore be dismissed with prejudice as non-cognizable.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Motion to Vacate be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and

that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

July 17, 2024.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge
